**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WESTERN DIVISON**

| | |
|---|---|
| **LATONYA YVETTE KYLE, On behalf of the Estate of SAVAWN BENJAMIN KYLE (deceased) S.M.K a minor child and K.C.K a minor child** | |
| | ) |
| | ) |
| | ) |
| **Plaintiff,** ) | |
| | ) |
| **V.** | ) |
| | ) |
| **DETECTIVE LAWRENCE P SAIZ DETECTIVE B. SIGALA DETECTIVE M DUKE TAMARA STRAUCH J. MARITZA STEWART and other UNKNOWN EMPLOYEES' CITY OF SAN ANTONIO POLICE DEPARMENT AND BEXAR COUNTY** | ) |
| | ) |
| **Defendant** ) | |
| | ) |

NO. SA22CA0023 XR

**JURY TRIAL DEMANDED**

---

## COMPLAINT

NOW COMES Plaintiff, The Estate of Savawn Benjamin Kyle, Representative Latonya Yvette Kyle, S.M.K a minor child and K.C.K a minor child complaining of Defendants Detective Lawrence Saiz, Detective B. Sigla, Detective M Duke, Tamara Strauch J. Maritza Stewart and other Unknown employees of the City of San Antonio and Bexar County, states as follows:

### INTRODUCTION

1. Plaintiffs, Savawn Kyle was wrongfully arrested on March 3, 2017, for Capital Murder of Renard B Smith in San Antonio Texas.

MJ-ESC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WESTERN DIVISION

LATONYA STEIN, INDIVIDUALLY, On behalf
of the Estate of SAVVAS BENJAMIN
KYLE (deceased), S.M.K. a minor child
and K.T.K. a minor child

                                    Plaintiff,

v.

[Defendants caption — mirrored, illegible]

                                    Defendant.

SA22CA0023

JURY TRIAL DEMANDED

COMPLAINT

NOW COMES Plaintiff, The Estate of Savvas Benjamin Kyle, Represented by Latonya Stein Kyle, S.M.K. a minor child and K.T.K. a minor child complaining of Defendants [mirrored text], States as follows:

INTRODUCTION

1.   Plaintiff, Savvas Kyle was wrongfully arrested on March 5, 2017, for a [illegible] [illegible] Round G Shein in San Antonio, Texas.

-1-

2.  On March 11,2017, Latonya Kyle made a $500,000.00 Thousand dollar bond for Capital Murder charge.  Kyle was then placed on a twenty-four-hour GPS monitor. As requested by Magistrate Judge Kyle was to remain at home twenty-four hours a day.

3.   Savawn Kyle was 23 years old and spent 3 years fighting his innocence.

4.  Savawn Kyle had nothing to do with the murder of Renard Smith and has always maintained his innocence till his own death.

5.  Not one piece of fingerprint DNA, or other physical evidence connected Kyle to Smith murder.

6.  The Detectives in the SAPD Homicide division had manipulated Deandre Lancaster (witness)into identifying Kyle using highly suggestive identification procedures. The fabricated identification was solely on the result of the Detectives misconduct.

7.  To frame Kyle for the Murder of Smith, the Defendants also concocted an entirely fictional claim that Kyle had robbed Smith for money. This was false.

8.   Kyle's arrest and prosecution were based on this and other shocking misconduct by the Defendants, all police officers with the City of San Antonio Police Department and Bexar County

9.  On October 8, 2018, after evidence revealing of the Defendants of their egregious misconduct and Kyle's innocence. Kyle's prosecution ended with Murder case being dismissed due to witness Deandre Lancaster coming forward with true facts. and a "Not Guilty "verdict given by Judge Castro.

10. Latonya Kyle and Sole heirs of the Estate of Savawm Benjamin Kyle (deceased) S.M.K a minor child. and K.C.K a minor child seek justice to the harm the Defendants have caused

and redress for the loss of liberty and terrible hardship that Kyle endured and suffered as a result of the Defendants' misconduct.

## JURISDICTION

11. This action is brought pursuant to 42 U.S.C 1983 and Texas law to redress the Defendants. Tortious conduct and their deprivation of Kyle's rights secured by the U.S Constitution.

12. This Court has jurisdiction of Kyle's federal claims pursuant to 28 U.S.C 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C 1367.

13. Venue is proper under 28 U.S.C 139(b). The events giving arise to Kyle's claims occurred within this judicial district, including the investigation, prosecution, and trail resulting in Dismissal and Nonguilty verdict.

## PARTIES

14. Savawn Benjamin Kyle spent more than three years fighting for his innocence for a crime he did not commit.

15. At all relevant to the events in the Complaint, defendants Detective Lawrence P Saiz #2474 B Sigala #2542 M Duke #2271 Tamara Strauch J. Maritza Stewart and other unknown law enforcement officers were police officers and prosecutors in the City San Antonio Police Department Bexar County District Attorney and Bexar County, Texas

16. Other unknow officers retired before this complaint could be filed.

17. The investigation of Smith crime was conducted jointly by the City of San Antonio via San Antonio Police Department. The above-named Defendants assisted one another in the investigation, shared information, and individually and collectively participated in the

misconduct alleged in this Complaint and facilitated, condoned, approved and turned a blind eye to each other's misconduct.

18. The City of San Antonio is or was the employer of the Defendants Detective Lawrence P Saiz, Detective B Sigala. Detective M Duke Tamara Strauch J. Maritza Stewart and unknown officers named in this complaint during their investigation of the Smith murder. as agents or employees of the City of San Antonio is liable for all torts committed by the Defendants pursuant to the doctrine of respondent superior. Additionally, the City of San Antonio and Bexar County is responsible for the policies and practices of the San Antonio Police Department and is liable for violations of Savawn Benjamin Kyle's rights caused by the unconstitutional policies and customs of the San Antonio Police Department

19. Each individual Defendant, known and unknown, always acted under color of law and within their scope of his or her employment relevant to this lawsuit. Each of the individual Defendants is sued in his or her individual capacity unless otherwise noted.

## FACTS

### THE CRIME

20. At approximately 8:00 p.m. on October 25. 2016, 29- year -old Renard B Smith was shot and killed on the 8000 block of Midcrown on the Northeast side of San Antonio

21. As seen on surveillance Smith was called over by a young man identified as Kenton Haynes, Smith walked over to Haynes and seconds later a pop was heard, and customers were running. Haynes is seen jumping over the silver Mercedes hood to drive away.

22. Police arrived and found Smith laying on the ground near a green trash can with a gunshot to the back of the head.

23. Emergency technicians. arrived Smith was then transported to BAMC hospital and later died.

24. As more officers arrive on the scene, they began to seek witnesses who could provide information.

25. Viewing body cameras an Officer speaks to Rico who provided the officer with his account of the incident. Rico stated that a bright skin had on a muscle shirt shot Smith and drove away in a silver Mercedes. Rico also stated, if you find the silver Mercedes that your man.

26. The San Antonio Police Department Homicide Division assigned the investigation of Smith murder to defendant Detective Lawrence P. Saiz.

27. Detective Saiz was assisted in the investigation by, among others, defendants Detectives Duke, Detective B. Sigla and other unknow officers.

28. In early November 2016, the Defendants noted in their investigation notes that they had received information that the Plaintiff was the shooter in the murder of Renard Smith. by an unknown witness who showed the defendants a picture of Kyle off the witness phone. Witness had refused to make a statement.

29. The information identifying Kyle as a suspect was false. Kyle had nothing to do with the murder of Smith and was innocent of the offense.

**The Defendants' Investigation Revealed Kyle Could Not Have Been the Perpetrator.**

30. Defendant Detective Lawrence Saiz, Detective M Duke and other Defendants of San Antonio Police Department conducted and initial canvas of the convenient store and neighborhood and from a picture off a nearby bystander phone. A picture of Kyle Facebook had been shown to Detective Saiz.

31. Kyle in fact had been in the area. Kyle had received a haircut not far from the store.

32. The Defendants decided Kyle should be the suspect with absolutely no evidence to implicate him in the crime.

33. Moreover, shortly after deciding that Kyle was the suspect, the Defendants' own investigation revealed that he could not have committed the murder.

34. The Defendants had learned that Kyle had a strong alibi, that would have made it impossible for him to be the perpetrator. They learned, for example, that Kyle had received a haircut same time shooting had occurred.

35. The Barbershop and Local Convenient Store where sufficient distance away Kyle could not have moved that quickly. Witness would have seen Kyle run away.

**Forensic Evidence Collected by the Defendants also excludes Kyle**

36. The crime scene evidence at the store also excluded Kyle from the murder.

37. The Defendants collected numerous items and potential forensic value. Not one item of evidence implicated Kyle.

38.. In fact, no DNA or physical evidence linked Kyle to the crime scene of the murder.

39. According to the Defendants Kyle had removed money from Smith black gym shorts after Smith had collapsed. No DNA, fingerprints or other physical evidence was found linking Kyle to the murder. The money was never taken out of Smith shorts till the hospital to inventory of his clothing and items.

**The Defendants Decided to Fabricate a Case Against Kyle**

The Defendants Doctor an Affidavit Report to Conceal Exculpatory Information

40. On November 8, 2016, located at 8000 Midcrown Rd, Deandre Lancaster was taken into custody after police ran the plates and identified the car he was driving to be stolen.

41.   Lancaster had several active warrants for Aggravated Robbery and driving without a license. Instructed by Saiz Lancaster was then transported to the Homicide Division   Saiz claimed Lancaster had requested to be escorted to homicide about information on a murder. Which that was also false.

42. There Lancaster was interviewed by the defendants Detective Saiz and other unknown officers.

43.   Detective Saiz showed witness Lancaster a photographic lineup which contained a photograph of Kyle. Prior to Lancaster interview /interrogation Witness Lancaster had been shown Kyle photo before.

44. The fabricated Identification and description of Kyle that the Defendants obtain from Lancaster occurred only because Detective Saiz told him who he should select and how to describe Kyle.

45.   Defendant Saiz, in concert with the other Defendants investigating the Smith murder deliberately doctored an affidavit report in order to conceal from Kyle highly exculpatory information.

46. Leaving no doubt, the Defendants, suppression of the information was intentional, Detective Lawrence P Saiz #2474 being a Peace Officer under the laws of the State of Texas and being duly sworn, on oath makes the following statements and accusations.

47. While reviewing a copy of the video footage, I saw the defendant and another unidentified male arrive in a silver or gray Mercedes Benz. The unidentified male approached Smith and led Smith to Defendant (Kyle) where the defendant was waiting. That was also false

48. Kyle was not seen on footage waiting for Smith. Kyle was not in that area as seen on footage.

- 7 -

## The Defendants Fabricate an Identification from Lancaster

49. The defendants' efforts to frame Kyle did not stop with the suppression of false reports

50. The defendants' fabricated an identification of Kyle from Lancaster. Prior to interrogation. Kyle Facebook picture was shown to Lancaster by Detective Saiz.

51. The Defendants efforts to obtain an identification of Kyle should have stopped there. Lancaster notified Detective Saiz that he did not know Kyle., the Defendants refuse to take no for an answer.

52. The Defendants, then instructed Lancaster to view an array of photos and make his" best guess". About whom might have been the perpetrator. The same photo of Kyle shown to Lancaster prior to interrogation was on the array to view.

53. Detective Saiz then provided additional information to Lancaster, all in violation of the established practices and San Antonio Police Department rules, including:

a. The person in the photograph- Kyle had been identified by other witness in the case.

b. Police knew Kyle was the shooter and he was "on the run"

c. The detectives investigating the case needed just one more identification of the shooters in order to make it "stick"

d. Detectives would assist Lancaster with his open court cases, including the matter for which he had just been arrested.

e. Detectives would assure that Lancaster would receive a $5,000 reward that had been offered for information concerning the murder.

f. Lancaster would not have to go to court to testify.

54. Despite the fact Lancaster was not at the scene prior to the shooting nor during the shooting that would have allowed him to make an identification, that he did not identify Kyle when shown

the photo array. The Defendants continued their efforts to manipulate Lancaster into providing a positive identification of Kyle.

55. The fabricated Identification and description of Kyle that the Defendants obtain from Lancaster occurred only because Detective Saiz told him who he should select and how to describe Kyle.

### The Defendants Fabricated a Confession and Attribute to Kyle

60. Three months later after the initial interrogation with Saiz. Saiz runs a Crime Stoppers report on January 31, 2017. Offering a Reward of $5000 dollars with information in Renard Smith Murder

56. On February 2. 2017 four months later Detective Saiz on an affidavit of Arrest said he contacted Lancaster again later to obtain more detailed information. Saiz failed to mention Witness Lancaster location was in the Bexar County Jail 200 North Comal Street San Antonio, Texas 78207. Witness had been incarcerated since November 8, 2016.

57. Saiz also stated, Witness was at Kyle home when the statement was made of Kyle killing Smith. That was false. Lancaster did not know who Kyle was until the arrest on November 8, 2016. Lancaster also could not state where Kyle lived, nor had he been in Kyles's home prior or after the murder of Smith.

58. Saiz also states in an affidavit of arrest for Kyle, Teyawna Roberson advised Saiz she was at 8011 location and knew Smith had money on him and once she had arrived at the hospital it was not on him. That also was false.

59. Roberson was not the wife, nor immediately family and all property was turned over to police for evidence.

60. Securing a false confession from witness Lancaster with the $5000 dollar reward. Lancaster was also released from Bexar County jail on a PR bond and placed in a hotel room located on Austin Hwy.

61. Witness Lancaster also was placed on a GPS monitor. Pending his Aggravated Assault cases.

62. Witness Lancaster received special treatment to secure arrest for Kyle. Lancaster having three aggravated assault charges. Policy and procedures PR Bond would disqualify Lancaster from receiving a PR Bond.

63. An arrest for Kyle was issued without any evidence, DNA or forensics.

64.   March 3, 2017, Kyle was arrested and taken to the City of San Antonio Police Department and interrogated by Detective Saiz and another UNKNOWN officers.

65. When questioned Kyle denied any involvement in the Smith murder and refused to answer any questions.

66. Nevertheless, Detective Saiz and UNKNOWN officer wrote fabricated reports claiming that Kyle stated to Lancaster "You need to stop talking about Nardy, you don't know why I had to kill him". Those reports were false.

67. Kyle never signed any written statement containing incriminating information, The only document Kyle signed was a Miranda waiver form he was eventually given, in which he indicated that he was refusing to answer any questions.

**The Defendants Fabricated Statements from Other Witnesses to Bolster Their Case Against Kyle.**

68. In addition to action above, the Defendants- Detective Saiz and other UNKNOWN detectives coerced and manipulated other witnesses and wrote fabricated police reports falsely documenting their interviews with witnesses to further bolster their case against Kyle.

69. For example, the Defendants threatened and pressured into falsely claiming that Kyle made incriminating statements to each of them.

70. In at least one handwritten statement suddenly disappeared

71. Upon information and belief, the Defendants destroyed or otherwise suppressed the statement because it contained evidence to show Kyle was innocence

72. Nevertheless the misconduct did not stop. Upon receiving a written letter from the witness Lancaster stating Kyle had nothing to do with Smith murder.

### Kyle's Wrongful Arrest and Prosecution

73. Between 2016 and 2017, as a result of the Defendants' misconduct and based solely on the Defendants 'fabricated evidence described in this complaint. Kyle was arrested and prosecuted for the Murder of Renard Smith.

74. In the absence of the Defendants' misconduct, Kyle would not have been arrested and prosecuted.

75. At no point in time between 2016 and present day till Kyle death has there been any credible evidence giving rise to the probable cause to suspect Kyle of the shooting of Smith.

76. The Defendants used false reports to obtain an arrest. They provided those false reports to state prosecutors, and those reports became the basis for charging and prosecuting Kyle. Tamara Strauch in a false report stated Kyle had a fight with Witness Lancaster in Bexar County jail. That also was false.

77. On March 15, 2018, a year later J. Maritza Stewart filed a "Motion for Continuance" stating, Subsequently, the defendant was found in possession of a semi-automatic firearm chambered to fire a 9 mm to add more false reports.

78. On March 15, 2018, Stewart duly sworn on oath deposes and says he is an attorney for the State of Texas, County of Bexar and the facts alleged in the States First Motion for Continuance are true and correct

79. Stewart identified in a sworn statement that Kyle had in fact murdered Rashad Smith. Which the victim's name is Renard Smith?

80.    The Defendants suppressed the true circumstances surrounding the crime scene evidence, the identification procedures used with Lancaster, their interviews with other witnesses, and their interrogations

81. In addition on information and belief, the defendants suppressed and destroyed additional evidence, including a written statement from Witness Lancaster to Kyle and family which would also have shown Kyles' innocence. Prosecutors withheld a letter written by witness Lancaster to clear Kyle name from the murder of smith.

82. Kyle maintained his innocence throughout the proceedings

83. Kyle's life was turned upside without any warning. Kyle was constantly targeted by SAPD and Bexar County since 2015

84. In addition Kyle was taken away from his kids and his family and friends. He missed special occasions. He missed his kids' birthdays. He returned home and after continuously fighting to clear his name.

85. In addition to the severe trauma Kyle sustained being caged in a cell for twenty-three hours and one hour to shower and make one call for 18 months of wrongful arrests and

prosecution Kyle loss of liberty, the Defendants' misconduct continued to cause Kyle extreme physical and psychological pain and suffering, humiliation, nightmares, anxiety, depression, despair and other physical,

86. Kyle has been branded as a killer. He suffered profound reputational harm as a result of the misconduct by the defendants. Kyle was never able to gain control of his life back.

### Kyle charges dropped

87. Kyle fought hard to prove his innocence.

88. On October 8, 2018, all charges against Kyle were dropped

### COUNT I

### 42 U.S.C 1983 – Due Process
### (Fourteenth Amendment)

89. As described in detail above. The Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under the color of law and within the scope of their employment, deprived Kyle of his constitutional rights to due process and the right to a fair trial.

90. The Defendants' misconduct described in this count result in the unjust and wrongful arrest and prosecution of Kyle and deprivation of Kyle' liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment, absent this misconduct, the arrest and prosecution of Kyle could not have, been pursued.

91. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, or in total disregard of the truth and Kyle's clear innocence

92. As a result of the Defendants' misconduct described in this Count, Kyle suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, forced in a gaged for twenty-three hours a day and one hour to shower.

93. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of San Antonio and Bexar County.

## Count II

### 42 U.S.C 19883 – Illegal Detention and Prosecution
### (Fourth and Fourteenth Amendments)

94. In the manner described above, the Defendants, individually, jointly and in the capacity with one another, as well as under the color of law and within scope of their employment, accused Kyle of a criminal activity and exerted influence to initiate, continue and perpetuate judicial proceedings against Kyle without probable cause for doing so spite of the fact that they knew Kyle was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

95. In so doing, the Defendants caused Kyle to be deprived of his liberty without probable cause, detained without probable cause, and subjected improperly to judicial proceedings for which there was no probable cause. The judicial proceedings were instituted and continued maliciously, resulting in injury.

96. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the right of others, and/or in the total disregard of the truth and of Kyle's clear innocence.

97. As a result the Defendants' misconduct described in this Count, Kyle suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and others grievous injuries and damages as set forth above

98. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of San Antonio and Bexar County in the manner more fully described in the below in Count V

## Count III

### 42 U.S.C 1983 – Failure to Intervene

99. In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Kyle constitutional rights, even though they had the duty and opportunity to do so.

100. The misconduct described in the Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the right of others, and/or in total disregard of the truth and of Kyle innocence.

101. As a result of the Defendants failure to intervene to prevent the violation of Kyles' constitutional rights, Kyle suffered loss of liberty, great anguish, humiliation, degradation physical and emotional pain and suffering, and other grievous injuries and damages as set forth.

102. This misconduct described in this Count was undertaken pursuant to the policies and practices of the City of San Antonio and Bexar County. In the manner more fully described below in Count V

## Count IV

### 42 U.S.C 1983 – Conspiracy to Deprive Constitutional Rights

103. In the manner described more fully above, the Defendants, acting in the concert with other co-conspirators, known and unknown, reached and agreement among themselves to frame Kyle for the murder of Smith, regardless of Kyles' guilt or innocence, and thereby to deprive him of his constitutional rights.

104. The Defendants and their co-conspirators agreed to accomplish an unlawful purpose and/ or a lawful purpose by the unlawful means,

105. In addition, these co-conspirators agreed among themselves to protect one another from the liability for depriving Kyle of his rights.

106. In the furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

107. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and/or in total disregard of the truth and of Kyles' clear innocence.

108. The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of San Antonio and Bexar County. In the manner more fully described below in Count V

**Count V**

**42 U.S.C 1983 – Policy and Custom Claim**

109. The City of San Antonio and Bexar County routinely worked together on criminal investigations.

110. The City of San Antonio and Bexar County employed the individual Defendants, supervised them, and promulgated policy, including written policies and unwritten customs, that caused the wrongful arrest and prosecution of Kyle as described above.

111. Kyles' injuries described in this complaint and the violations of his constitutional rights discussed above were caused by the policies and customs of the City of San Antonio and Bexar County, as well as by the actions of the policy making officials for the City of San Antonio and Bexar County.

112.  At all times relevant to the events described in this complaint and for a period time before and after, the City of San Antonio and Bexar County failed to promulgate proper or adequate rules and regulations, policies, and procedure: the conduct of interrogations and questioning of criminal suspects and witnesses by officers and agents of the San Antonio Police Department. Obtaining statements and testimony from witnesses: the collection documentation, preservation testing, and disclosure of evidence, and information bearing the credibility of the law -enforcement witnesses; the writing of the police reports and taking of investigative notes; and the maintenance of the investigative files and disclosure of those files in criminal proceedings

113. In addition, or alternatively, the City of San Antonio and Bexar County failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the training and supervision of officers and agents of the City of San Antonio Police Department.

114. Officers of the City of San Antonio and Bexar County committed these failures to promulgate proper and adequate rules, regulations, policies, and procedures.

115. Had the officers and agents of the City of San Antonio or Bexar County promulgated appropriate policies, then the violation of Kyle constitutional

rights would have been prevented.

116. At times relevant to the events described in this complaint and for a period of time before and after, the City of San Antonio and Bexar County had notice of practices and customs of officers and agents of the San Antonio Police Department that included one or more of the following: (1) officers fabricated statements and testimony of witness and/or manipulated or threatened witness into making false statements; (2) officers manipulated witness to incriminate suspects in photo identification procedures; (3) officers fabricated false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain and/or preserve evidence and/or destroy evidence, including physical evidence.(5) officers failed to disclose exculpatory evidence.

117. These practices and customs, individually and/or together, flourished because of the leaders. Supervisors, and policymakers of the City of San Antonio and Bexar County directly encouraged, and were thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper investigation and interrogation techniques, and by failing to adequately punish or discipline instances of similar misconduct, thus directly encouraging future abuses like those affecting Kyles.

118. The above practices and customs, so well settled to constitute de facto policies of the City of San Antonio and Bexar County, were able to assist and thrive, individually and/or

together, because policymakers with authority over the exhibited deliberate indifference to the problem, thereby effectively ratifying it.

119.The City of San Antonio and Bexar County have been on notice of these policies, and practices, and customs, and the risk of harm they posed.

120. Both policy and practice, policymakers and supervisors condoned and facilitated "back the blue" within the City of San Antonio and Bexar County. The existence of the is "back the blue" the lack of adequate policies for the County's Internal Affairs division, and the culture of condoning and covering up misconduct.

121. The policy makers for the City of San Antonio and Bexar County had notice of illegal policies and practices, and they repeatedly approved of, and ratified the unlawful actions of officers and agents, including the Defendants, including their violations of Kyle's constitutional rights.

122. Kyle's injuries and the constitutional violations suffered were caused by officers, agents and employees of the City of San Antonio and Bexar County, including but not limited to the Defendants, who acted in pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this count.

## COUNT VI

### State Law Claim- Malicious Prosecution

123. In the manner described above, the Defendants, individually, jointly, and in conspiracy with one another, as well as within the scope of their employment, accused Kyle of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Kyle without probable cause for doing so.

124. In do so, the Defendants caused Kyles to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and/or continued maliciously. Resulting in injury.

125. The judicial proceedings were terminated in Kyles's favor. All charges were dropped.

126. The misconduct described in this count was undertaken intentionally, with malice, with reckless indifference to the rights of others, and/or in total disregard of the truth and Kyle's clear innocence.

127. As a result the Defendants' misconduct described in this Count, Kyle suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous injuries and damages as set forth above.

## COUNT VII

### State Claim- Intentional Infliction of Emotional Distress

128. The actions, omissions, and conduct of the Defendants were extreme and outrageous. Actions were rooted in the abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Kyle.

129. As a result the Defendants' misconduct described in this Count, Kyle suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous injuries.

## COUNT VIII

### State Law Claim- Civil Conspiracy

130. As described more fully in the preceding paragraphs, the Defendants, acting in concert with the co-conspirators, known and unknown, reached an agreement among themselves to

frame Kyle for a crime he did not commit and conspired by concerted action to accomplish and unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed to protect one another from liability for depriving Kyle of these rights.

131. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity

132. The violations of law are described in this complaint were accomplished by the Defendants' conspiracy.

133. The misconduct described in this count was objectively unreasonable and was undertaken intentionally and in total disregard of the truth and of Kyle clear innocence.

134. As a result of the Defendants' misconduct described in this count, Kyle suffered loss of liberty, great mental anguish, humiliation, degradation, physical, and emotional pain and suffering, and other grievous injuries and damages set forth above.

## COUNT IX

### State Law Claim- Respondeat Superior

135. While committing the misconduct alleged in the preceding paragraph, the Defendants were employees, members, and agents of the City of San Antonio and Bexar County, acting at all relevant times within the scope of their employment.

136. Defendants City of San Antonio and Bexar County are liable as principal for all torts committed by their agents.

## COUNT X

### State Law Claim- Indemnification

137. The City of San Antonio and Bexar County are obligated under the law to pay any tort judgement against their employees and agents.

138. The Defendants were employees, members and agents in the City San Antonio and Bexar County, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

139. The City of San Antonio and Bexar County are responsible to pay and judgement entered against the Defendants, Latonya Kyle on behalf of the Estate of Savawn Benjamin Kyle S.M.K a minor child and K.C.K a minor child demand therefore demand judgement against the Defendants City of San Antonio and Bexar County, in the amounts awarded to Latonya Kyle on the behalf of the Estate of Savawn Kyle S.M.K a minor child and K.C.K a minor child against the individual Defendants as damages, cost and interest.

WHEREFORE, Plaintiff LATONYA KYLE ON THE BEHALF OF SAVAWN KYLE ESTATE S.M.K a minor child and K.C.K a minor, respectfully request that this court enter a judgement in their favor and against the Defendants DETECTIVE LAWRENCE SAIZ,

DETECTIVE B. SIGLA, DETECTIVE M DUKE, TAMARA STRAUCH J MARITZA STEWART and UNKNOWN EMPLOYEES of the CITY OF SAN ANTONIO and BEXAR COUNTY, awarding compensatory damages, and cost against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each individual Defendants, and any other relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Latonya Kyle, hereby demand a trial by jury pursuant to the Federal Rule of

1. Of Civil Procedure 38(b) on all issues so triable.

Dated: 1/21/2022

Respectfully submitted,
LATONYA KYLE

Name:   Latonya Yvette Kyle
Title:    Plaintiff

- 22 -

|            |                          |
|------------|--------------------------|
| Address:   | 8275 FM 78               |
| Address:   | Suite # 3                |
| City, State, Zip: | Converse TX 78109 |
| Phone:     | (210) 304-0365           |
| Fax:       | (210)661-6245            |
| E-Mail:    | Kylelatonya72@gmail.com  |
| Attorney No.: |                       |

Attachment 11 – Certificate of Service

## CERTIFICATE OF SERVICE

I, _Latoya Kyle_, Plaintiff pro se, do here by certify that on the ___12th___ Day of ___January___, 20 _22_, a true and correct copy of the foregoing pleading was forwarded to , the attorney for (Defendant) by _____(State the manner of delivery - eg. U.S. Mail; Hand Delivery; Certified Mail)_____ at the following address:_____(give address of Attorney for the Defendant)_____.

_Latonia Yvette Kyle (Reynolds)_

_8575 Fm 78 Ste 3_

_Converse, TX 78109_

_(210) 364 0365_

Dated: _1/12/22_ _____

_____
Signature of Plaintiff

Rev. Ed. October 26, 2017